UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

**WENDY K. HAGAN**
    Plaintiff

**v.**                                                                                                 **No. 1:12-CV-00199-LLK**

**CAROLYN W. COLVIN**
    Commissioner of Social Security
    Defendant

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff's Complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, to conduct all further proceedings in this case, including entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. Docket Entry Number (DN) 9.

The fact and law summaries of the Plaintiff and the Defendant are at DN 12 and DN 13, respectively. Mary G. Burchett-Bower represents Plaintiff.

The final decision of the Commissioner, which is presently before this Court upon judicial review, was rendered on April 22, 2011, by Administrative Law Judge (ALJ) Lawrence Levey. Administrative Record (AR), pp. 88-99.

For the reasons below, the final decision of the Commissioner is AFFIRMED, and Plaintiff's complaint is DISMISSED.

**Plaintiff's Medical-Vocational Profile**

Plaintiff's principal contention upon judicial review is that the ALJ erred in discounting Dr. Shivakumar's disabling medical assessment and finding that she has a residual functional capacity (RFC) for a limited range of light work.

Plaintiff is a younger individual born on February 5, 1970 (AR, p. 97). She alleges disability due to physical and mental impairment. She does not challenge the ALJ's evaluation of her mental impairment but alleges disability due to residual effects of two cervical spine surgeries, including ongoing neck pain, trapezius muscle spasms, migraine headaches, and decreased strength and mobility in the upper and lower extremities.

Plaintiff filed for disability in March, 2009, before the first cervical spine surgery was performed in April, 2009 (AR, p. 88).

On April 14, 2009, John E. Harpring, M.D., who is associated with the Neurosurgical Institute of Kentucky, performed anterior fusion of C5-C7 (AR, p. 762). After surgery, Plaintiff experienced continuing symptoms, which Dr. Harpring attributed to pseudoarthrosis / non-union, which he, in turn, related to Plaintiff's failure to heed medical advice to quit smoking.

Pseudoarthrosis is a condition following spinal fusion surgery in which segments of vertebral bone do not merge over the disc space. The condition occurs more frequently in heavy smokers. *Meyers v. Astrue*, 681 F.Supp.2d 388 n.5 (W.D.N.Y.2010).

In June and October, 2009, the Commissioner's program physicians, Robert Brown and P. Saranga, provided physical residual functional capacity (RFC) assessments in connection with Plaintiff's disability claim. These physicians opined that Plaintiff's condition "should improve within 12 months after surgery" to the point that she would be able to perform a limited range of

medium work (AR, pp. 528 and 607). There is no indication that these physicians were aware of Plaintiff's post-surgical pseudoarthrosis, which eventually necessitated a second, re-do surgery.

The ALJ "considered the opinions of [these] medical consultants [Drs. Brown and Saranga], but [found] that the evidence of record suggests greater limitations" (AR, p. 96). The ALJ found that Plaintiff can perform a limited range of light work (AR, p. 92).

On August 31, 2010, Dr. Harpring performed a re-do posterior fusion of C5-C7 (AR, p. 760). Although a post-surgical CT-scan indicated that the "surgically fused vertebrae appear well fused" (AR, p. 832), Plaintiff testified that the second surgery did not "help" (AR, p. 67).

Dr. Harpring's last notation of record is dated September 21, 2010. It states that Plaintiff should engage in "[n]o driving, no lifting" (AR, p. 760). The ALJ declined to give this opinion controlling weight as it was given during the post-surgical healing process (AR, p. 96) and does not satisfy the duration requirement, i.e., to be disabling, an impairment or limitation must be "expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Plaintiff does not dispute the ALJ's discounting of Dr. Harpring's findings in this regard as she "readily admits that the record is unclear as to whether the no lift, no drive restriction is still applicable" (DN 12, p. 4).

On February 23, 2011, at "six months out from [re-do surgery]," Plaintiff was examined by Advanced Registered Nurse Practitioner (ARNP) Kristin Huckleberry, Dr. Harpring's associate at Neurosurgical Institute. Nurse Huckleberry opined that Plaintiff is doing "fairly well from her surgery" and that "Dr. Harpring will see her in approximately three months to make sure she continues to improve" (AR, p. 820). Nurse Huckleberry reported relatively positive findings, including "[s]trength is 5/5 in the upper extremities bilaterally" and "normal" station, gait, tone, and

range of motion in the upper and lower extremities (AR, p. 819). Nurse Huckleberry referred Plaintiff to pain management and physical therapy (AR, p. 820).

The administrative hearing was held on February 24, 2011 (AR, p. 36). Between the date of the hearing and the ALJ's decision on April 22, 2011, a flurry of medical evidence was generated and submitted to the ALJ for consideration.

On March 5, 2011, a CT-scan was taken at T.J. Samson Community Hospital in Glasgow, Kentucky, at Dr. Harpring's request. The CT-scan, as interpreted by Michael Shadowen, M.D., suggests that the second surgery resulted in union of the cervical vertebrae: "The surgically fused vertebrae appear well fused. ... There are mild hypertrophic changes at the vertebral body margins and facet joints. The upper cervical disc spaces are maintained, and the vertebrae are normally aligned" (AR, p. 832).

On March 7, 2011, Plaintiff visited T.J. Samson ER with complaints of neck and back pain (AR, pp. 827-831).

On March 14, 2011, she returned to the ER with a migraine headache (AR, pp. 822-826).

On March 21, 2011, in coordination with Nurse Huckleberry (AR, p. 838), Plaintiff went to T.J. Samson Rehabilitation Services to commence physical therapy. Physical therapist Gordon M. Melton proposed a six-week course of physical therapy with no indication that the long-term goals / discharge criteria could not be met (AR, p. 837). Plaintiff apparently did not follow through with physical therapy as her last session occurred on March 25, 2011 (AR, p. 834).

According to Plaintiff's fact and law summary, at this point in the chronology, "Ms. Hagan was sent to [Doddachallor] Shvakumar [M.D.] by her attorney for clarity on physical limitations after the second cervical surgery" (DN 12, p. 3). Dr. Shivakumar regularly serves as

Commissioner's consultant. Dr. Shivakumar examined Plaintiff on March 30, 2011. His narrative report is at AR, pp. 844-52, and his completion of the Physical Medical Assessment is at AR, pp. 853-59.

Dr. Shivakumar opined that Plaintiff is limited to lifting/carrying of 10 pounds occasionally and 5 to 8 pounds frequently (AR, p. 853). This finding appears to be based upon uncritical acceptance of the fact that "[o]n questioning, [Plaintiff] states she has a weight restriction of 10 pounds from her surgeon. She states she can lift and carry 5 to 10 pounds and mostly 5 pounds during 8-hour workday frequently, shorter distances" (AR, p. 846). There is no documentary support for Plaintiff's assertion of a 10-pound weight restriction assigned by any medical source other than Dr. Shivakumar.

Dr. Shivakumar opined that Plaintiff can stand/walk for only 4 hours in an 8-hour work day and can sit for the same amount of time (AR, p. 854). This finding appears to be based on acceptance of Plaintiff's medically-uncorroborated assertion that "[s]he can walk about half a mile or stand 30 minutes, sit 30 minutes, and has to change position" (AR, p. 846).

Finally, Dr. Shivakumar opined that Plaintiff would experience "frequent" problems with attention / concentration, "frequent" need for unscheduled breaks, and absences from work of "more than four days per month" due to pain, subjective symptoms, and treatment. These findings, if accepted, would render Plaintiff incapable of any type of full-time work. As such, they are not truly medical opinions but rather opinions that are tantamount to an finding of disability, which are entitled to no "special significance." 20 C.F.R. § 404.1527(d)(3).

**Plaintiff's Contention**

Plaintiff's principal contention upon judicial review is that the ALJ erred in discounting Dr. Shivakumar's disabling medical assessment and finding that she has a residual functional capacity (RFC) for a limited range of light work. The argument is unpersuasive.

On every page of Dr. Shivakumar's disabling assessment form, when asked to identify the "medical findings" supporting the limitations assessed, he simply referred to Plaintiff's alleged neck/cervical and lumbar/low back pain (AR, pp. 853-59). "Subjective claims of disabling pain must be supported by objective medical evidence in order to serve as the basis of a finding of disability." *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir.1995). The opinion of even a treating physician, which Dr. Shivakumar was not, is properly discounted if it "appears to be a characterization of the plaintiff's complaints, rather than the results of any independent medical evaluation." *Durio v. Commissioner*, 1996 WL 169362 at *2 (6th Cir.).

The ALJ gave "Dr. Shivakumar's opinion little weight, as it is inconsistent with [his] own reported findings, based on a single examination of the claimant and one undertaken for the express purpose of supporting the claimant's disability claim, and is inconsistent with treating source reports and findings and the record as a whole" (AR, p. 96). In addition, the ALJ noted that, in the months following the second surgery, the medical records indicate that Plaintiff was doing relatively well, with no major problem (AR, p. 94).

The ALJ identified a substantial basis for declining to defer to Dr. Shivakumar's disabling opinion. Otherwise, there is no medical evidence in the administrative record that contradicts the ALJ's finding that Plaintiff retains the ability to perform some light jobs. In so finding, the ALJ acted within his "zone of choice within which [he] can go either way, without interference by the

courts." *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir.2009). The Plaintiff's disability claim failed due to lack of objective, medical proof and because the ALJ found her complaints of disabling pain and other subjective limitations to be incredible.

The regulations make clear that a claimant's RFC is an issue reserved to the Commissioner, and the ALJ assesses a claimant's RFC "based on all of the relevant evidence in your case record." 20 C.F.R. § 404.1545(a). "The Social Security Act instructs that the ALJ – not a physician – ultimately determines a Plaintiff's RFC." *Coldiron v. Commissioner*, 391 Fed. Appx. 435, 439 (6th Cir.2010). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Commissioner*, 342 Fed. Appx. 149, 157 (6th Cir.2009).

## Order

For the foregoing reasons, the final decision of the Commissioner is AFFIRMED, and the Plaintiff's complaint is DISMISSED.